## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD LEE
Wyoming, PA 18644

                *Plaintiff*,

    v.

SABER HEALTHCARE GROUP, LLC
23700 Commerce Park Road
Beachwood, OH 44122

and

MOUNTAIN CITY NURSING AND
REHABILITATION CENTER, LLC
d/b/a MOUNTAIN CITY NURSING AND
REHABILITATION CENTER
1000 W 27th Street
Hazleton, PA 18201

                *Defendants*.

CIVIL ACTION NO.:

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Richard Lee, brings this action against his former employers, Saber Healthcare Group, LLC and Mountain City Nursing and Rehabilitation Center, LLC d/b/a Mountain City Nursing and Rehabilitation Center (collectively, "Defendants"), for discriminating against Plaintiff based upon his age (68 at the time of demotion and separation), his association with a disabled family member (his wife who suffers from Stage III breast cancer), and Plaintiff's exercise of his rights to FMLA-protected medical leave to care for his wife.

Defendants' unlawful conduct includes subjecting Plaintiff to discriminatory comments regarding his age and his wife's serious medical condition, demoting Plaintiff without cause,

replacing Plaintiff with a substantially younger employee, failing to provide Plaintiff with the same progressive discipline afforded to younger employees, and effectively discharging Plaintiff, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

Plaintiff seeks damages, including economic loss, compensatory damages, liquidated damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.    PARTIES

1.    Plaintiff, Richard Lee, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Wyoming, Pennsylvania.

2.    Plaintiff is currently seventy (70) years of age. As of when Plaintiff was demoted by Defendants in July 2023, Plaintiff was sixty-eight (68) years of age.

3.    At all relevant times, Plaintiff was a qualified individual who was associated with an individual with a disability within the meaning of the Americans with Disabilities Act and the Pennsylvania Human Relations Act, in that Plaintiff's spouse suffered from Stage III breast cancer, a serious health condition requiring ongoing medical treatment, chemotherapy, surgeries, and postoperative care.

4.    At the time Plaintiff took FMLA-protected leave, Plaintiff had been employed by Defendants for at least twelve (12) months and had worked at least twelve hundred and fifty (1,250) hours of service during the preceding twelve (12) month period.

5.      Defendant Saber Healthcare Group, LLC is a limited liability company organized under the laws of the State of Ohio and maintains a principal place of business at 23700 Commerce Park Road, Beachwood, Ohio 44122.

6.      Defendant Saber Healthcare Group, LLC is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania, including within the Eastern District of Pennsylvania.

7.      Defendant Mountain City Nursing and Rehabilitation Center, LLC d/b/a Mountain City Nursing and Rehabilitation Center is a limited liability company organized under the laws of the State of Pennsylvania and maintains a principal place of business at 1000 W 27th Street, Hazleton, Pennsylvania 18201.

8.      Defendant Mountain City Nursing and Rehabilitation Center, LLC d/b/a Mountain City Nursing and Rehabilitation Center is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

9.      Defendant Mountain City Nursing and Rehabilitation Center, LLC d/b/a Mountain City Nursing and Rehabilitation Center operates a nursing and rehabilitation facility located at 401-403 Hazle Township Boulevard, Hazle Township, Pennsylvania 18202, within the Eastern District of Pennsylvania judicial district.

10.    At all relevant times, Plaintiff was employed at and primarily worked from Defendants' Hazle Township, Pennsylvania facility.

11.    At all relevant times, Defendants employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's work location, including approximately three hundred and fifty (350) employees at the Hazle Township facility.

12.     At all relevant times, Defendants employed fifteen (15) or more employees for purposes of coverage under the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

13.     At all relevant times, Defendants employed twenty (20) or more employees for purposes of coverage under the Age Discrimination in Employment Act.

14.     Defendants collectively maintain and operate business offices and facilities within the Eastern District of Pennsylvania, including the nursing and rehabilitation facility where Plaintiff was employed.

15.     Each of the named Defendants in this matter present themselves and conduct business as the "alter ego" of the other named Defendant.

16.     Defendants collectively presented themselves as a single company such that third parties, including Plaintiff, dealt with them as one unit.

17.     Defendants share common ownership and common personnel policies, procedures, and employment practices.

18.     Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the actions complained of herein.

19.     At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

20.     At all relevant times, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

4

21.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

### III.  JURISDICTION AND VENUE

22.    The causes of action which form the basis of this matter arise under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

23.    This Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

24.    This Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

25.    This Court has jurisdiction over Count III (FMLA) pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

26.    This Court has supplemental jurisdiction over Count IV (PHRA) pursuant to 28 U.S.C. § 1367.

27.    Venue is proper in this District Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including at Defendants' facility located at 401-403 Hazle Township Boulevard, Hazle Township, Pennsylvania 18202, where Plaintiff was employed and where the discriminatory acts occurred.

28.    On or about August 7, 2023, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination alleged herein. Plaintiff's PHRC Complaint was cross-filed with the Equal Employment Opportunity Commission

("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

29.     On or around November 14, 2025, Plaintiff received a Notice of Right to Sue from the EEOC. This action is timely filed within ninety (90) days of receipt of the Notice of Right to Sue. Attached hereto and marked as Exhibit "2" is a true and correct copy of the PHRC Closure Notification and Notice of Right to Sue (with personal identifying information redacted).

30.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

**Employment History and Stellar Performance**

31.     Plaintiff was originally hired by Oak Health, a predecessor owner of Mountain City Nursing and Rehabilitation Center, on or about September 30, 2016.

32.     Plaintiff was hired into the position of Licensed Nursing Home Administrator.

33.     On or about February 12, 2018, following a change of ownership, Defendants acquired the facility and Plaintiff's employment continued with Defendants.

34.     Throughout his employment with Defendants, Plaintiff consistently performed his job duties in a highly competent manner and received outstanding feedback and recognition.

35.     Plaintiff held the position of Administrator of Record for Mountain City Nursing and Rehabilitation Center, a 297-bed nursing facility located in Hazle Township, Pennsylvania.

36.     In 2022, Plaintiff was awarded the Saber IMPACT award at Defendants' annual meeting in Myrtle Beach.

37.     Plaintiff consistently received the maximum merit increase of 2% annually.

38.     Plaintiff regularly received positive yearly evaluations.

39.     Plaintiff was regularly mentioned as an example of high performance at company meetings.

40.     During Plaintiff's tenure as Administrator, he achieved significant improvements at the facility, including improving the facility's CMS rating from 1-star to 3-star for the first time in the facility's history.

41.     Under Plaintiff's leadership, the facility became one of the most profitable facilities in Defendants' portfolio.

42.     Plaintiff successfully eliminated agency staffing for more than two years prior to the COVID-19 pandemic.

43.     Plaintiff consistently exceeded company goals for staff retention at a facility employing approximately 350 employees.

44.     Throughout his employment with Defendants, Plaintiff had no disciplinary or performance issues.

45.     Plaintiff had no history of being placed on any performance improvement plan or receiving any written warnings.

**Spouse's Serious Health Condition and FMLA Leave**

46.     Plaintiff is married to Suzanne Lee, and they have been married for more than thirty-four (34) years.

47.     In or around early 2020, Plaintiff's wife was diagnosed with Stage III breast cancer.

48.     Stage III breast cancer is a serious health condition requiring extensive medical treatment.

49.     Plaintiff's wife underwent chemotherapy treatment for her cancer.

50.    Plaintiff's wife underwent multiple surgeries, including a seventeen (17) hour surgery, in connection with her cancer treatment.

51.    Following her initial surgery, Plaintiff's wife required additional surgery the next day due to a suspected hemorrhage in her reconstructed breast.

52.    Plaintiff's wife experienced significant side effects from chemotherapy.

53.    Plaintiff's wife experienced postoperative complications following her surgeries.

54.    Plaintiff's wife continues to suffer from debilitating symptoms related to her cancer and its treatment, including lymphedema, debilitating neuropathy, bone and body pain, and recurrent gastrointestinal symptoms.

55.    Plaintiff's wife's cancer recurred and she continued to require ongoing medical treatment and care.

56.    Defendants were aware that Plaintiff's wife had Stage III breast cancer.

57.    Defendants were aware that Plaintiff's wife experienced side effects from chemotherapy and had surgeries with postoperative complications.

58.    Defendants were aware that Plaintiff was his wife's primary caregiver.

59.    Plaintiff requested intermittent leave under the Family and Medical Leave Act to care for his wife due to her serious medical condition.

60.    Defendants approved Plaintiff's request for intermittent FMLA leave.

61.    Plaintiff took off work several hours per week to care for his wife and to take her to medical appointments related to her cancer treatment.

62.    Plaintiff made up his work during other hours, including working from home and working during evenings and weekends.

63.    Plaintiff's work was completed timely and accurately despite his caregiving responsibilities.

64.    The facility continued to operate at a high level during the time Plaintiff was taking intermittent FMLA leave.

65.    Plaintiff last reported to Sharon Zeigler (51), Regional Vice President, Operations.

66.    Zeigler reported to Cody Meenan (36), Divisional Vice President, Operations.

67.    In February 2023, Plaintiff began reporting to Zeigler.

68.    At the time of the adverse actions taken against him, Plaintiff was the oldest employee directly reporting to Zeigler.

69.    In or around early 2023, Meenan commented to Plaintiff that Plaintiff was distracted by his wife's needs, due to her Stage III breast cancer.

70.    Meenan and Zeigler commented to Plaintiff that things had to be hard for Plaintiff due to his wife's medical condition.

71.    Meenan indicated to Plaintiff that he believed Plaintiff was no longer working at his full capacity due to Plaintiff's age and his wife's illness.

72.    Plaintiff understood Meenan's comments to mean that Meenan believed Plaintiff could not perform his job because of Plaintiff's age and because of his wife's disability.

73.    Plaintiff denied that his wife's medical condition was affecting his ability to perform his job and challenged Meenan to provide examples of any deficiency in his performance.

74.    Meenan could not provide any examples of deficient performance by Plaintiff.

75.    Meenan would acknowledge that Plaintiff followed all company policies and was doing everything possible to run the facility.

76.     Despite Plaintiff's stellar performance record, Meenan stated to Plaintiff that something significant needed to change.

79.     Meenan gave Plaintiff no feedback on what Plaintiff could or should do differently to improve his performance.

80.     Meenan gave Plaintiff no opportunity to address any alleged performance deficiencies.

81.     Meenan stated that Plaintiff had "run out of time" to complete census tasks.

82.     Meenan and Zeigler repeatedly told Plaintiff that it was "understandable" that Plaintiff was not succeeding due to his age and his wife's needs.

83.     Plaintiff understood Meenan's and Zeigler's comments to be evidence of age discrimination and disability discrimination by association.

84.     Prior to Plaintiff informing Defendants of his wife's disability and taking intermittent FMLA leave, Plaintiff had no indication that his job was in jeopardy.

85.     Prior to Plaintiff beginning to report to Zeigler in February 2023, Plaintiff had no indication that his job was in jeopardy.

86.     On or about June 3, 2023, Plaintiff was verbally informed by representatives of Defendants that his position as Administrator was being terminated due to alleged "financial performance."

87.     Defendants provided no specific information about what financial performance issues allegedly warranted Plaintiff's removal from his position.

88.     On July 3, 2023, Zeigler visited Plaintiff at the facility without prior notice.

89.     During this meeting, Zeigler stated to Plaintiff, without explanation, that he would be removed from his Administrator position.

90.     Zeigler stated that Plaintiff could remain employed with Defendants in a Mobile Administrator position.

91.     Zeigler stated that the Mobile Administrator position would be good for Plaintiff because it could give him more time to spend with his wife and help care for her.

92.     Zeigler stated that it was likely that Plaintiff would only have to travel to nursing homes in the local area and she would likely be able to come up with projects that kept Plaintiff closer to home.

93.     Plaintiff understood Zeigler's comments about the position being good for him because of his wife's condition to be evidence of disability discrimination by association.

94.     On July 5, 2023, Meenan called Plaintiff by telephone.

95.     During this call, Meenan stated that he "forgot" to mention that, in the Mobile Administrator position, Plaintiff may need to travel to nursing homes in the Philadelphia area.

96.     The Philadelphia area is more than two (2) hours one way from Plaintiff's home and from the facility where he had been working.

97.     On July 10, 2023, Meenan called Plaintiff by telephone.

98.     During this call, Meenan provided Plaintiff with two (2) options: be demoted to Mobile Administrator, which would significantly reduce his salary and require regular travel to various nursing homes within the state; or resign from his employment and be paid three (3) months of compensation in exchange for a release of all claims against Defendants and confidentiality.

99.     Meenan told Plaintiff that, in the Mobile Administrator position, Plaintiff may need to travel to nursing homes in the Pittsburgh area in addition to the Philadelphia area.

100.   The Pittsburgh area is four and a half (4.5) hours to six and a half (6.5) hours one way from Plaintiff's home.

101.   Meenan stated that he thought having to travel to Pittsburgh would take this option off the table for Plaintiff because Plaintiff would not be able to drive to Pittsburgh and back home in one day to be able to care for his wife.

102.   Plaintiff understood Meenan's comments to be evidence of associational disability bias and an acknowledgment that Defendants knew the Mobile Administrator position was incompatible with Plaintiff's caregiving responsibilities.

103.   Defendants knew that Plaintiff could not accept a position requiring extensive travel given his responsibilities as primary caregiver for his wife.

104.   The Mobile Administrator position would have required Plaintiff to be away from home for extended periods, making it impossible for him to provide necessary care to his wife.

105.   The offered demotion to Mobile Administrator position involved a reduction in salary by $75,000 annually.

106.   The Mobile Administrator position also eliminated Plaintiff's eligibility for performance bonuses.

107.   Plaintiff would have lost his bonus potential, which had recently resulted in bonuses of nearly $40,000 each in 2022 and 2023.

108.   On July 18, 2023, Plaintiff emailed Zeigler and Meenan declining the severance package and electing to be demoted to remain employed with Defendants.

109.   On July 24, 2023, Defendants formally demoted Plaintiff to Mobile Administrator, effective August 10, 2023.

110.   Plaintiff was given no option to remain in an Administrator position.

111.    Defendants did not place Plaintiff on any progressive discipline before removing him from his Administrator position.

112.    Plaintiff received no explanation, including any selection criteria, as to why he was demoted while younger and/or non-disabled Administrator employees were not demoted.

113.    On August 10, 2023, Defendants required Plaintiff to complete onboarding paperwork for the Mobile Administrator position, including signing an arbitration agreement.

114.    Plaintiff refused to sign the arbitration agreement.

115.    Defendants insisted that Plaintiff sign the arbitration agreement as a condition of continuing employment.

116.    Plaintiff understood Defendants' insistence on the arbitration agreement to be an attempt to force him to give up his legal rights as a condition of remaining employed.

117.    On August 15, 2023, Plaintiff submitted a resignation letter, effective immediately, because Defendants had made his continued employment intolerable.

118.    Defendants created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

119.    Plaintiff was presented with a choice between accepting an unsuitable demotion with a $75,000 pay cut and incompatible travel requirements, or resigning with a release of all claims.

120.    A reasonable person in Plaintiff's circumstances would have felt compelled to resign rather than accept the unsuitable demotion or sign away their legal rights.

121.    At the time of the adverse actions taken against him, Plaintiff was sixty-eight (68) years old.

122.    At the time of the adverse actions taken against him, Plaintiff was the oldest Administrator in his region.

123.    The following employees, among others, reported to Zeigler along with Plaintiff: Natalice Hankey (35), Administrator; Samuel Berresford (35), Administrator; Stephen Quindlen (35), Administrator; Francis Dwyer (45), Administrator; Christopher Pisano (45), Administrator; Tynisha Harder-Duncan (45), Administrator; Eric Cline (45), Administrator; Kristen DeBello (55), Administrator; Jason Auge (55), Administrator; Barbara Reigel (55), Administrator; Michelle Carroll (59), Administrator; Cindy Woodward (65), Administrator; and Linda Manns (65), Administrator.

124.    Plaintiff was more qualified to perform his position and the positions of the other Administrators than the substantially younger Administrators who were not demoted.

125.    Upon information and belief, younger Administrators who had performance issues were placed on Performance Improvement Plans and were given opportunities to improve their performance.

126.    Upon information and belief, younger Administrators were given multiple chances to correct performance deficiencies before any adverse action was taken.

127.    Upon information and belief, at least one younger Administrator was placed on multiple PIPs before being terminated.

128.    Plaintiff was not given a PIP or any opportunity to address alleged performance deficiencies before being demoted.

129.    Plaintiff was the only Administrator employee who was demoted in early July 2023.

130.    In July 2023, Defendants hired Patricia Shutt (39), an external candidate, to replace Plaintiff as Administrator of Mountain City Nursing and Rehabilitation Center, effective August 10, 2023.

131.    Shutt is substantially younger than Plaintiff, being twenty-nine (29) years younger than Plaintiff.

132.    Plaintiff was more qualified to perform the Administrator position than Shutt.

133.    Shutt came from a much smaller nursing home and had less experience than Plaintiff.

134.    Upon information and belief, Shutt does not have a spouse with a serious medical condition requiring FMLA leave.

135.    Younger and/or non-disabled employees who did not exercise FMLA rights were not subjected to the same adverse treatment as Plaintiff.

136.    Defendants' stated reasons for removing Plaintiff from his Administrator position are false and pretextual.

137.    Plaintiff had achieved historic improvements in the facility's CMS ratings.

138.    Plaintiff had successfully eliminated agency staffing costs.

139.    Plaintiff had achieved excellent staff retention rates.

140.    Defendants could not identify any specific financial performance deficiencies that warranted Plaintiff's removal.

141.    Defendants could not identify any specific tasks that Plaintiff had failed to complete or any specific performance issues.

142. The temporal proximity between Plaintiff's exercise of FMLA rights and the adverse actions taken against him demonstrates that his FMLA usage was a motivating factor in Defendants' decision.

143. The discriminatory comments made by Meenan and Zeigler about Plaintiff's age and his wife's illness demonstrate that these protected characteristics were motivating factors in Defendants' decision.

144. Defendants' refusal to place Plaintiff on a PIP while affording that opportunity to younger employees demonstrates age discrimination.

145. Defendants' replacement of Plaintiff with a substantially younger employee demonstrates age discrimination.

146. The true reasons for Defendants' adverse actions against Plaintiff were Plaintiff's age, his association with his wife's disability, and his exercise of FMLA rights.

147. Plaintiff's age was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including in his demotion and constructive discharge.

148. Plaintiff's wife's serious health condition and Plaintiff's status as her primary caregiver were motivating and/or determinative factors in Defendants' discriminatory treatment of Plaintiff, including in his demotion and constructive discharge.

149. Plaintiff's exercise of FMLA rights was a motivating and/or determinative factor in Defendants' adverse actions against Plaintiff, including in his demotion and constructive discharge.

150. The discriminatory conduct to which Plaintiff was subjected was severe and/or pervasive enough to alter the terms and conditions of his employment.

151. Defendants' conduct created a hostile work environment based on Plaintiff's age and his association with a disabled family member.

152. Plaintiff was constructively discharged from his employment due to Defendants' discriminatory conduct.

153. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer emotional distress.

154. Defendants failed to prevent or address the discriminatory conduct to which Plaintiff was subjected.

155. Defendants failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

156. As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – ADEA

157. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

158. By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the ADEA.

159. Plaintiff was sixty-eight (68) years of age at the time of the adverse actions taken against him, and therefore within the protected class under the ADEA.

160. Plaintiff was qualified for his position as Administrator and was performing his duties in a highly competent manner.

161.    Plaintiff suffered adverse employment actions, including demotion and constructive discharge.

162.    Plaintiff was replaced by Patricia Shutt, who was substantially younger than Plaintiff, being approximately thirty-nine (39) years of age.

163.    Defendants treated younger employees more favorably than Plaintiff by placing younger employees on Performance Improvement Plans while denying Plaintiff that opportunity.

164.    Defendants' conduct toward Plaintiff was motivated by discriminatory animus based on his age, as evidenced by comments that Plaintiff was no longer at full capacity due to his age and that things had to be hard for Plaintiff due to his age.

165.    As a direct and proximate result of Defendants' violations of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

166.    Said violations were willful and warrant the imposition of liquidated damages.

167.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless this Court grants the relief requested herein.

168.    No previous application has been made for the relief requested herein.

## COUNT II – ADA

169.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

170.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the ADA.

171.    Plaintiff's spouse suffered from Stage III breast cancer, a serious medical condition that substantially limited major life activities.

172.    Defendants were aware of Plaintiff's spouse's disability.

173.    Defendants discriminated against Plaintiff because of his association with his spouse.

174.    Defendants' discriminatory conduct is evidenced by direct statements that Plaintiff was distracted by his wife's needs and that Plaintiff was overwhelmed with his wife's diagnoses.

175.    Defendants unlawfully regarded Plaintiff as unable to perform his job due to his caregiving responsibilities for his spouse.

176.    As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

177.    The conduct of Defendants, as set forth above, was willful, malicious and outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

178.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless this Court grants the relief requested herein.

179.    No previous application has been made for the relief requested herein.

## COUNT III – FMLA

180.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

181.    By committing the foregoing acts of interference with and retaliation against Plaintiff, Defendants have violated the FMLA.

182.    Plaintiff was an eligible employee under the FMLA.

183.    Plaintiff requested and took qualifying leave for his spouse's serious health condition.

184.    Defendants took adverse action against Plaintiff, including demotion and constructive discharge.

185.    A causal connection exists between Plaintiff's exercise of his FMLA rights and Defendants' adverse actions, as evidenced by temporal proximity and discriminatory comments about Plaintiff's wife's illness.

186.    Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

187.    Defendants' violations of the FMLA warrant the imposition of liquidated damages.

188.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

189.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless this Court grants the relief requested herein.

190.    No previous application has been made for the relief requested herein.

## COUNT IV – PHRA

191.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

192.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the PHRA.

193.    Defendants discriminated against Plaintiff based on his age.

194.    Defendants discriminated against Plaintiff based on his association with his spouse's disability.

195.    As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

196.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless this Court grants the relief requested herein.

197.    No previous application has been made for the relief requested herein.

## VI.    RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.    Declaring the acts and practices complained of herein to be in violation of the ADEA;

b.    Declaring the acts and practices complained of herein to be in violation of the ADA;

c.    Declaring the acts and practices complained of herein to be in violation of the FMLA;

d.    Declaring the acts and practices complained of herein to be in violation of the PHRA;

e.    Enjoining and permanently restraining the violations alleged herein;

f.    Entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

g.      Awarding damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

h.      Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

i.      Awarding liquidated damages to Plaintiff under the ADEA;

j.      Awarding liquidated damages to Plaintiff under the FMLA;

k.      Awarding punitive damages to Plaintiff under the ADA;

l.      Awarding Plaintiff such other damages as are appropriate under the ADEA, the ADA, the FMLA and the PHRA;

m.       Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

n.      Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                                        **CONSOLE MATTIACCI LAW, LLC**

Date: February 11, 2026

                         By:     */s/ Rahul Munshi*
                                 Rahul Munshi, Esquire
                                 Attorney ID No. 307548
                                 1525 Locust Street, 9th Floor
                                 Philadelphia, PA 19102
                                 Phone: (215) 545-7676
                                 Email: munshi@consolelaw.com

                                 *Attorneys for Plaintiff*